## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| DENISE MONAK | : | |
| 312 N. Erie Beach Rd | : | |
| Lakeside, Ohio 43440 | : | |
| | : | |
| | : | |
| Plaintiff, | : | CASE NO. 3:20-cv-2682 |
| | : | |
| v. | : | JUDGE |
| | : | |
| | : | MAGISTRATE JUDGE |
| LAKESIDE CHAUTAUQUA REALTY | : | |
| LIMITED | : | |
| 213 W. 3rd St | : | **Jury Demand Endorsed Herein** |
| Lakeside Marblehead, OH 43440 | : | |
| | : | |
| c/o Agent, ACFB Incorporated | : | |
| 41 S. High St, Suite 2600 | : | |
| Columbus, OH 43215 | : | |
| | : | |
| Defendant. | : | |

## **COMPLAINT**

NOW COMES Plaintiff Denise Monak ("Plaintiff") and proffers this Complaint for damages against Defendant Lakeside Chautauqua Realty Limited ("Defendant").

## **JURISDICTION AND VENUE**

1.      This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. Thus, this Court has jurisdiction under 28 U.S.C. § 1331.

2.      Venue is proper pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendants in the Northern District of Ohio, Plaintiff performed her job duties there, and Defendant is doing and has done substantial business in the Northern District of Ohio.

3.      Plaintiff was an "employee" as defined by the Fair Labor Standards Act.

4.      Defendant is an "employer" as defined in by the Fair Labor Standards Act.

**THE PARTIES**

5.      Plaintiff is a natural person residing in Ottawa County, Ohio.

6.      Defendant is a domestic limited liability company incorporated under the laws of the State of Ohio.

7.      Defendant conducts business in the Northern District of Ohio and employed Plaintiff in the Northern District of Ohio.

**FACTUAL BACKGROUND**

8.      Plaintiff was hired by Defendant in 2011 as a Cottage Rental Agent. A few years later, her Plaintiff merged into a Rental Agent/Property Manager position.

9.      Plaintiff's employment with Defendant was devoid of any significant performance or disciplinary issues. In fact, Plaintiff received consistently strong customer reviews over the course of nearly 11 years with Defendant

10.     As a Rental Agent/Property Manager, Plaintiff's job duties consisted of coordinating reservations for the rental properties, updating and checking Property Management Agreements and sending to her supervisor for approval, recording Property Management Agreements in Lakeside's system, recording reservations in Lakeside's system, collecting payments from guests and delivering payments to Lakeside's administration office, requesting and arranging maintenance and cleaning of the rental properties, answering phone calls from guests and owners, and resolving issues with guests.

11.     Nearly all of Plaintiff's jobs and duties required supervisor approval.

12.     At all relevant times, Plaintiff was considered an employee of Respondent.

13.     At the time of her hire, Plaintiff received a wage of $12 per hour. By the time of her termination, Plaintiff received a wage of $17.18 per hour.

14.     In or around early August 2020, Defendant hired a new CEO – Daniel Rogers.

15.     Formulating a new plan for the structure of the organization was one of Mr. Rogers's goals as the new CEO. In September, Mr. Rogers shut down the rental office for one week so he could "change things around."

16.     However, Mr. Rogers's attitude towards some of the workers was hostile. At one point, speaking to Plaintiff, Mr. Rogers said, "I own you." At another time, Plaintiff expressed that she wanted to speak with the HR department, to which he responded, "not without me present."

17.     Mr. Rogers also told Plaintiff that she would soon be classified as an independent contractor, despite the fact that she had been an employee since her hire in 2011.

18.     Plaintiff suffers from severe anxiety, which stemmed from a very violent choking incident in her past. Consequently, she is unable wear a mask at work, as she was asked to do because of the pandemic. Defendant required all employees to wear masks while at work.

19.     Plaintiff emailed HR Representative, John Mann, expressing her concern about being required to wear a mask. Plaintiff sent this email in confidence.

20.     Unfortunately, Mr. Mann informed Mr. Rogers about Plaintiff's anxiety and inability to wear a mask. This was upsetting to Plaintiff because she did not feel comfortable with Mr. Rogers and did not want him to know intimate details of her life.

21.     Nonetheless, Mr. Rogers emailed Plaintiff and asked to set up a meeting to discuss her anxiety and inability to wear a mask. Plaintiff agreed to meet.

22.     During the meeting, Mr. Rogers told Plaintiff that Defendant wanted to keep her safe by preventing her from having any human contact.

23.     Mr. Rogers also asked Plaintiff to become an independent contractor. He asked her to draft a contract with a wage and job description and gave her two business days to write up the contract.

24.     Plaintiff was perplexed by this request because she was never told why she had to become an independent contractor, nor did she know how to draft a contract. But because she could not wear a mask, she left the meeting and planned on drafting the contract.

25.     However, because Plaintiff did not know how to draft a contract or know what becoming an independent contract entailed, she decided to take medication for her anxiety – which would allow her to wear a mask – so that she could remain at work in her current position.

26.     Plaintiff informed Mr. Rogers of this decision.

27.     On Monday, October 5, 2020, when the contract was due, Plaintiff emailed Mr. Rogers and said, "After many prayers, thoughts and conversations, I am now taking medications for my anxiety. I will now be wearing a mask when necessary and

when 6' social distancing is not possible. There will not be a need for 'no human contact' or isolation."

28.     Nonetheless, because Mr. Rogers still wanted Plaintiff to become an independent contractor, he refused to allow her to remain in her position.

29.     Mr. Rogers responded to Plaintiff's email by saying, "[w]hile I'm happy for you to have reached the personal decisions you've reached, moving you to a contract position may be the best all around decision as an employee of Lakeside."

30.     But, again, Mr. Rogers never explained why. Plaintiff was clearly an employee and her job duties do not support classification as an independent contractor.

31.     Three days later, on or around October 8, 2020, Plaintiff expressed to Mr. Rogers in a meeting that she did not think she should become an independent contractor, as she had done some of her own research and did not believe that her job duties were that of an independent contractor.

32.     Plaintiff opposed her reclassification to that of an independent contractor because this reclassification would have been unlawful since her job duties demonstrate that she is an employee.

33.     As soon as Plaintiff told him that she did not believe she should be classified as an independent contractor, Mr. Rogers terminated her.

34.     Mr. Rogers claimed that part of the reason for Plaintiff's termination was poor customer service. Mr. Rogers gave this reason despite Plaintiff not having any negative performance history in her personnel file.

35.     Moreover, Mr. Rogers told Plaintiff that she would not be allowed to enter Lakeside's premises for one year.

36.     Accordingly, Defendant's reason for terminating Plaintiff is untrue, pretextual, and retaliatory.

37.     Notably, since Plaintiff's termination, Defendant has hired two other employees to fulfill Plaintiff's previous job duties.

38.     Defendant has hired 24-year-old (approximately) Emily Messino, Vice President of Hospitality, and 47-year-old (approximately) Lisa Redett, Director of Cottage Rentals. In their performance of Plaintiff's previous job duties, neither Ms. Messino nor Ms. Redett are classified as contractors.

## COUNT I
### FLSA Retaliation

39.     All of the preceding paragraphs are realleged as if fully rewritten herein.

40.     This claim is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

41.     Plaintiff, an employee, engaged in a protected activity when she opposed Defendant's attempt to misclassify her as a contractor.

42.     Defendants knew that Plaintiff engaged in such protected activity.

43.     A causal connection between the protected activity and the adverse employment action exists because in the same meeting where Plaintiff engaged in such protected activity, Defendant terminated Plaintiff.

44.     Because Plaintiff engaged in the aforementioned protected activity, Defendant took an adverse employment action by terminating Plaintiff's employment and denying her the salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

45.    As a direct and proximate result of Defendant's willful and intentional conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. Accordingly, Plaintiff seeks liquidated damages, punitive damages, interest and attorneys' fees, and all other remedies available, as a result of Defendant's retaliation in violation of 29 U.S.C. §215.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ Rachel Sabo Friedmann, Esq.
Rachel Sabo Friedmann (0089226)
Peter G. Friedmann (0089293)
(Rachel@TheFriedmannFirm.com)
(Pete@TheFriedmannFirm.com)
**The Friedmann Firm LLC**
1457 S. High Street
Columbus, Ohio 43207
(614) 610-9757: Phone
(614) 737-9812: Fax

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ Rachel Sabo Friedmann, Esq.
Rachel Sabo Friedmann (0089226)